# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| TAMMY L. BANKS, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. 15-CV-01040-CJW <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.  INTRODUCTION

Plaintiff, Tammy L. Banks (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security disability insurance benefits (DIB), and supplemental security income (SSI), under Title II and XVI (respectively) of the Social Security Act, 42 U.S.C. §§ 405(g), 423, 1383(c)(3).  Claimant contends the Administrative Law Judge (ALJ) erred when he failed to: (1) properly consider whether claimant met or equaled Listing 1.04(A) or 1.04(C); and (2) fully and fairly develop the record as to claimant's functional limitations before and after her surgery.  For the reasons that follow, the Court affirms the Commissioner's decision and enters judgment in favor of the Commissioner.

## II.  FACTUAL BACKGROUND

Claimant was born in 1963.  AR 40, 79, 171.[1]  She completed high school.  AR 40, 221.  She has previously worked as a poultry plant worker, hand packager, lock assembler, dietary aide, and laundry worker.  AR 40, 67-68.  Claimant alleged she

---

[1] "AR" refers to the administrative record below.

became disabled on September 1, 2010, due to sciatica and high blood pressure. AR 16, 79.

## III.    PROCEDURAL BACKGROUND

On March 8, 2012, claimant filed the instant application for DIB and SSI. AR 16. The Commissioner denied claimant's application initially and upon reconsideration. AR 117-24, 129-36. Claimant then requested a hearing before an ALJ. ALJ Eric S. Basse held a hearing on November 13, 2013. AR 16, 29-76. On February 3, 2014, the ALJ issued a decision denying claimant's application. AR 13-28. Claimant sought review by the Appeals Council, which denied review on June 3, 2015 (AR 4-6), leaving the ALJ's decision as the final decision of the Commissioner.

On December 14, 2015, claimant filed a complaint in this court seeking review of the Commissioner's decision. Doc. 1. On April 5, 2016, with the consent of the parties, United States District Court Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 10. The parties have now briefed the issues, and on July 20, 2016, the matter was deemed fully submitted and ready for decision. Doc. 15.

## IV.    DISABILITY DETERMINATOINS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks and citations omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is

considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1545(a)(4), 404.1520(a)(4)(iv), 416.945(a)(4), 416.920(a)(4)(iv). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do given the claimant's RFC, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390

F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## V. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision.

At Step 1, the ALJ found claimant was not gainfully employed and had not engaged in substantial gainful activity since September 1, 2010. AR 18.

At Step 2, the ALJ determined claimant had the following severe impairments: "degenerative disc disease, status post recent laminectomy;[2] chronic abscess on left breast; mild obesity." AR 19. The ALJ found other claimed impairments, including hypertension and headaches were not severe. *Id*.

At Step 3, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment. AR 19.

At Step 4, the ALJ determined claimant's RFC. The ALJ found that claimant could perform sedentary work except she can only occasionally stoop and she cannot

---

[2] A laminectomy "creates space by removing the lamina — the back part of the vertebra that covers your spinal canal. Also known as decompression surgery, laminectomy enlarges your spinal canal to relieve pressure on the spinal cord or nerves." Laminectomy, MAYO CLINIC, (Sept. 3, 2015), http://www.mayoclinic.org/tests-procedures/laminectomy/basics/definition-/prc-20009521.

5

climb ladders, ropes, or scaffolds and must avoid concentrated exposure to extreme cold. AR 19. Having reached this conclusion, the ALJ determined claimant could perform past relevant work as a lock assembler. AR 22. Accordingly, the ALJ found claimant was not disabled, and so did not reach Step 5 of the analysis.

## VI. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (internal citation omitted); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks and citations omitted). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation marks and citations omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence . . . ." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989) (internal citation omitted). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VII. DISCUSSION

Claimant argues the ALJ's decision is flawed for two reasons:

1. Claimant argues the ALJ failed to properly consider whether claimant's impairments met or equaled Listing 1.04(A) and 1.04(C). Specifically, claimant argues the medical evidence established that her degenerative disc disease met the severity of Listing 1.04(A) (for nerve root compression) and 1.04(C) (for lumbar spinal stenosis). Doc. 12, at 15-22.

2. Claimant argues the ALJ failed to develop the record regarding claimant's functional limitations. Specifically, claimant alleges there was insufficient medical evidence establishing the appropriate work-related limitations and the ALJ improperly relied on his own medical judgment in arriving at claimant's RFC assessment. Doc. 12, at 22-26.

The court will address these arguments separately below.

### A. Whether The ALJ Erred in Determining if Claimant's Impairments Met or Equaled Listing § 1.04

When, as here, an ALJ has found a claimant to have a severe impairment, then at Step Three of the analysis, the ALJ is to determine if the impairment meets or equals one of the presumptively disabling impairments listed in the regulations; if it does, then the claimant is considered disabled. The ALJ found claimant had several severe impairments and went on in Step Three to determine if her impairments, individually or in combination, met or equaled one of the listed impairments. AR 19. The ALJ found they did not. *Id*. Claimant argues that she meets Listings 1.04(A) and 1.04(C) and asks the Court to award benefits or, alternatively, to remand the case to the ALJ to consider those listings. Listings 1.04(A) and 1.04(C), define musculoskeletal spinal impairments as:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> * * *
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A) & (C). An inability to ambulate, as that term is used in Listing 1.04(C), "means an extreme limitation of the ability to walk; i.e.,

an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2(b)(1). Examples include an inability to walk without the aid of a walker and the inability to engage in routine ambulatory tasks like shopping to going to a bank. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2(b)(2).

For a claimant to satisfy a listing for an impairment, a claimant must show that his or her condition meets all criteria in such a listing. *Deckard v. Apfel*, 213 F.3d 996, 997 (8th Cir. 2000) (citing *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995)). *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.") (emphasis in original); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (to meet burden of proof, claimant must present medical findings equal in severity to all criteria of listing).

In this case, claimant satisfies the first requirement of Listing 1.04, because the ALJ found she has degenerative disc disease. Claimant does not satisfy Listing 1.04(A), which requires evidence of "limitation of motion of the spine, motor loss [ . . . ] accompanied by sensory or reflex loss and [ . . . ] positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Nor does claimant satisfy Listing 1.04C, which requires evidence of "[l]umbar spinal stenosis resulting in pseudoclaudication[3] [ . . . ] manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C.

---

[3] "Pseudoclaudication can be a symptom of lumbar spinal stenosis, a condition that occurs when the spaces narrow between the vertebrae in your lower back." What is the difference between pseudoclaudication and claudication? MAYO CLINIC, (Apr. 15, 2014), http://www.-mayoclinic.org/diseases-conditions/spinal-stenosis/expert-answers/pseudoclaudication/faq-20057779.

Listing 1.04(A)

On September 26, 2011, a work-related physical revealed a positive straight-leg raising on the right, but not on the left. AR 302. Otherwise, the physical reflected that her sensation, motion, circulation, and strength were within normal limits. *Id*. The examiner determined that no work-related restrictions were needed for her job as a laundry worker. *Id*. Further, although x-rays revealed evidence of degenerative changes to the facets of her lumbar spine, with mild narrowing at L5-S1, it did not reveal any evidence of spondylolisthesis[4] or compression fractures. AR 309.

In December 2011, claimant had negative straight-leg raising bilaterally. AR 307.

In June 2012, a musculoskeletal examination by Dr. Daniel Woods showed signs of tenderness along the SI joints, greater on the left than the right, but noted no pain in the thoracic or cervical spine. AR 333. The doctor treated her pain with Mobic (a non-steroid anti-inflammatory drug) and prednisone. *Id*.

In December 2012, after another examination, Dr. Woods noted that claimant's general appearance, body habitus appeared normal, and reflexes were intact, although claimant had tenderness in the lumbar spine, with pain in the SI joints and sciatic notch. AR 341. Dr. Woods did not report any straight-leg testing or range of motion findings. *Id*.

In May 2013, claimant was seen at the University of Iowa Clinic (Iowa Clinic). She complained of lower back pain radiating to the extremities, but indicated that chiropractic treatment and hydrocodone helped minimize the pain. AR 398. A magnetic resonance imaging (MRI) of claimant's back revealed a mild narrowing of the spinal canal at the inferior lumbar spine, most notably at L4/L5 and L5/S1. AR 402. There was no evidence of spondylolisthesis, fractures, or dynamic instability. *Id*. Claimant

---

[4] "[A] spondylolisthesis is a forward slip of one vertebrae . . . relative to another . . . ." Mary Rodts, Spondylolisthesis: Back Condition and Treatment, SPINE UNIVERSE (last updated Feb. 3, 2016), http:// www.spineuniverse.com/conditions/spondylolisthesis/spondylolisthesis-back-condition-treatment.

was able to walk heel to toe with a steady gait and had a full range of motion on extension and flexion in the spine. *Id*. Claimant also exhibited full (5/5) strength in her lower extremities with no evidence of sensory or reflex loss. *Id*. Claimant was treated with a nerve root injection on the left L5 nerve root and anti-inflammatory medication. AR 403.

In June 2013, a musculoskeletal examination at the Iowa Clinic revealed claimant had 4/5 strength in her lower extremities, normal reflexes bilaterally, and no indication of sensory loss. AR 441. She also exhibited minimal pain to palpitation of the lumbar spinous process and negative straight-leg lift bilaterally. *Id*.

Finally, on September 5, 2013, although claimant complained to the Iowa Clinic at a follow up appointment that she was still in pain, it was noted that "[s]he has not been on any pain medications." AR 451. An examination showed full (5/5) strength in her lower extremities, but with 4/5 strength in "tibialis anterior" in her lower left extremity and a "positive straight leg raise on the left." AR 452. Examiners found "evidence of lumbar spinal stenosis on her MRI." *Id*.

Thus, a review of the medical evidence reveals that claimant only episodically had some symptoms required for Listing 1.04(A). On a couple of occasions, she had a positive straight-leg raising test on one leg, but other times, did not. Indeed, the two positive tests were separated by two years, and occurred on opposite legs. AR 302, 452. Regardless, the medical evidence does not show that claimant ever had a limited range of motion of the spine, motor loss, or sensory or reflex loss. Throughout this time, claimant maintained normal strength in her lower extremities. There was no evidence of atrophy with associated muscle weakness or muscle weakness.

Claimant argues in her reply brief that it is sufficient if she met the criteria of Listing 1.04(A), even if she did not exhibit the symptoms all at the same time, relying on *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013). After the *Radford* decision, the Commissioner published an Acquiescence Ruling explaining that the court's interpretation of the Listing conflicts with the agency's interpretation, and that the

Commissioner would apply the court's interpretation only within the area of the Fourth Circuit. SSAR 15-1(4), 80 Fed. Reg. 57,418-02 (Sept. 23, 2015). *Radford*, of course, is not binding in this Circuit. Moreover, other courts have rejected the *Radford* Court's reasoning. *See, e.g.*, *Atkins v. Colvin*, No. 15-1168-JWL, 2016 WL 2989393, at *9-10 (D. Kan. May 24, 2016). Regardless, the medical records in this case fail to demonstrate claimant had limitation of motion of her spine, or motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. Therefore, whether claimant consistently or episodically exhibited positive straight-leg raises, the medical evidence fails to demonstrate she had the other conditions necessary to meet or equal Listing 1.04(A).

In summary, substantial evidence as a whole does not support a finding that claimant met the requirement for Listing 1.04(A).

Listing 1.04(C)

To meet Listing 1.04(C), a claimant must show that her condition resulted in an inability to ambulate effectively. As previously noted, an inability to ambulate "means *an extreme limitation of the ability to walk*; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2(b)(1) (emphasis added). The medical evidence simply does not demonstrate claimant had an extreme limitation in her ability to walk. There is no mention in the September 2011 physical that claimant had difficulty with ambulation. AR 302. The same can be said of Dr. Woods' records during 2012. AR 333, 338-39. During the examination in May 2013, claimant walked heel to toe without difficulty. AR 402. In June 2013, records reflect she did not need assistance walking when she visited the hospital. AR 370. The medical records do not reflect that she was prescribed a walker or a cane—or even mention them. Plaintiff testified that she used a cane for walking, but produced no evidence a doctor ordered claimant to use a cane and, for that reason, it cannot be deemed medically necessary. *See Raney v.*

*Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (discounting a claimant's alleged reliance on use of a cane where there was no medical evidence showing it was medically prescribed).

The record citations claimant argues support a 1.04(C) Listing merely discuss claimant's spinal or lumbar stenosis. Although such a diagnosis is a component of Listing 1.04(C), by itself, it is not sufficient. *See McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013) ("Here, although McDade presents some evidence that he satisfies Listing 1.04, such as evidence of spinal stenosis, he provides no evidence that his spinal injury resulted in compromise of the nerve root or the spinal cord, which is a requirement for all conditions within Listing 1.04"). Without any record evidence showing claimant's lumbar stenosis resulted in an inability to ambulate, or any equivalent thereof, claimant cannot satisfy Listing 1.04(C).

In her reply brief, claimant argues that ambulation requires more than walking without a cane or being able to walk heel to toe in a test. Doc. 14, at 4. Claimant cites the Commissioner's regulation for the proposition that a person is able to ambulate effectively when, for example, they can "walk a block at a reasonable pace on rough or uneven surfaces; . . . use standard public transportation; . . . carry out routine ambulatory activities, such as shopping and banking; . . . [and] climb a few steps at a reasonable pace with the use of a single hand rail." *Id*. (citing 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00B2(b)(2)). Claimant argues she was unable to do these things, arguing that she had to take "quick showers because she could not stand long, and she had to sit down while getting dressed[;] . . . could not stand and walk long enough to cook a meal or complete cleaning chores without taking breaks to sit or lie down[;] . . . [and reported to her doctor that she was] able to walk only 1 to 2 blocks before her left leg felt weak, heavy, and painful." *Id*. She further claims she could not perform tasks like shopping or banking without leaning on a shopping cart or using a motorized cart. *Id*.

In making this argument, however, claimant relies on her own subjective statements, not on medical evidence. The ALJ found that "claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR 22. The ALJ explained that the severity of claimant's professed limitations is inconsistent with the conservative medical treatment doctors provided her. *Id.* The ALJ also noted that claimant admitted that her October 2013 back surgery had helped her symptoms. *Id.* The ALJ also gave "some weight" to the opinions of state agency medical consultants. AR 22. Among other things, those opinions note that claimant's credibility is "partially eroded due to no treatment prior to 10/11 and no treatment after 12/11." AR 92, 103. Those consultants also found claimant had no limitations on "Climbing Ramps/stairs," "Balancing," "Kneeling," "Crouching," or "Crawling." AR 91, 102.

Moreover, the medical records themselves do not support the severity of limitations claimant maintains. For example, in a May 2013 examination at the Iowa Clinic (prior to her back surgery), her "daily activity" was described as:

> Moderate activities are limited a little.
> Lifting or carrying groceries are limited a little.
> Climbing stairs is limited a little.
> Walking more than a mile is limited a little.
> Walking one block is limited a little.

AR 399. Under "functional ability" it described claimant as being able to "walk comfortably, but running is painful." AR 400. Finally, as previously stated, the medical records show that the pain claimant argues limited her ability to ambulate was successfully treated with medication.

In summary, substantial evidence as a whole does not support a finding that claimant met the requirements for Listing 1.04(C). Claimant has not demonstrated an inability to ambulate, as required to meet or equal that listing. Further, the record shows that claimant's pain has been successfully treated with medication. Finally, claimant's back surgery in October 2013 improved her condition.

### B. *Whether the ALJ Failed to Fully and Fairly Develop the Record of Claimant's Functional Limitations*

Claimant argues the ALJ failed to fully and fairly develop the record regarding her limitations both before and after her back surgery. Doc. 12, at 22-26. In particular, claimant argues "[i]t is not clear what evidence the ALJ relied on" in arriving at the RFC limitations "as the record does not contain statements from [claimant's] treating physicians regarding her functional limitations." Doc. 12, at 23. Claimant argues that "it appears that the ALJ formed his own medical opinion about [claimant's] impairments." *Id*. Claimant also argues the ALJ formed his own medical opinion in concluding that claimant's condition had improved after her surgery. *Id*. Finally, claimant emphasizes that the ALJ commented during the hearing about wanting to see a medical record from an appointment that was scheduled for the day after the hearing (AR 51), but claimant did not later produce that record. Doc. 12, at 25.

The Court starts with two premises. First, a claimant has the burden of providing evidence of her disability. 20 C.F.R. §§ 404.1512(a), 416.912(a). Second, an ALJ has a duty to fully and fairly develop the record. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). An ALJ is not, however, required to act as claimant's counsel in developing a record. *See, e.g.*, *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994) (holding ALJ does not have obligation to act as claimant's counsel in developing the record); *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (same). *See also Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (concluding it "would contravene the principle that the ALJ is not required to act as the claimant's advocate in order to meet his duty to develop the record . . . where, as here, neither counsel nor the claimant have obtained (or, so far as we can tell, tried to obtain) for themselves the records about which they now complain—suggesting that counsel has abandoned his role as advocate in favor of relegating that responsibility to the ALJ.").

Claimant had an obligation to prove her disability. To the extent the medical records failed to support her alleged functional limitations, the burden rested with claimant in the first instance to produce that evidence. She had, for example, the ability to present medical records for the appointment that was scheduled for the day after the hearing. That she failed to produce that record is not an indication the ALJ failed to develop the record. Indeed, there is nothing in the record to establish that claimant even attended that appointment. An ALJ does not have an obligation to go on fishing expeditions to look for medical evidence that may or may not exist. *See Nolting v. Colvin*, No. 4:13CV01006 HEA, 2014 WL 793774, at * 5 (E.D. Mo. Feb. 27, 2014) (in holding that the ALJ did not fail to properly develop the record, the court noted: "Here the record was more than sufficient to make a determination regarding those claims alleged by Plaintiff, without the necessity to resort to claim fishing expeditions on the part of the ALJ."). In any event, there is no showing that records from a follow up appointment would have changed the ALJ's assessment. *See Snead v. Barnhart*, 360 F.3d 834, 838-39 (8th Cir. 2004) (holding that if an ALJ is made aware of a crucial issue that might change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record).

Furthermore, claimant appears to confuse the ALJ's determination of functional limitations with an alleged substitution of medical opinion. It is true that an ALJ cannot substitute his opinion for medical opinions. *Finch*, 547 F.3d at 938. The ALJ's determination of claimant's residual functional capacity, however, is not a medical opinion. An RFC determination is not based exclusively on the medical evidence, or on any one physician's opinion, but on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."). Although an RFC assessment draws from medical sources, it is ultimately an administrative determination reserved to the Commissioner. *Id*. In this case, the ALJ

reviewed the entire medical record and determined claimant's functional limitations. This did not require that medical doctors render their own opinions of claimant's functional limitations. Nevertheless, the state agency medical consultants' reports support the ALJ's RFC assessment, finding claimant not disabled and suggesting functional limitations very similar to those the ALJ adopted. AR 77-116.

In summary, the Court finds the ALJ did not err in failing to more fully develop the record of claimant's limitations. The medical record, as a whole, provided ample evidence for the ALJ to determine claimant's RFC.

## *VIII. CONCLUSION*

For the reasons set forth herein, the Court **affirms** the Commissioner's determination that claimant was not disabled. Judgment shall be entered against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED** this 26th day of January, 2017.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa